# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KIMBERLY NALER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:16-cv-00627-JEO** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Kimberly Naler ("Naler" or "the claimant") brings this action seeking judicial review of a final adverse decision of the Acting Commissioner of the Social Security Administration ("Commissioner")[1] denying her application for Supplemental Security Income (SSI).  (Doc.[2] 1).  She also has filed a motion to remand this case to the Commissioner for further proceedings pursuant to Social Security Ruling ("SSR") 16-3p (2016 WL 1119029 (2016)), which modified the

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

criteria for evaluating the intensity and persistence of a claimant's symptoms. (Doc. 9). The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 17). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be reversed and remanded, although not based on SSR 16-3p .

## I. PROCEDURAL HISTORY

On December 21, 2012, Naler filed an application for SSI, alleging disability beginning March 1, 2012. (R.[3] 189, 208). Following the initial denial of her application (R. 128), Naler requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 2, 2014. (R. 52-84). Naler, her counsel, and a vocational expert attended the hearing. (R. 52). The ALJ issued a decision on November 21, 2014, finding that Naler was not disabled. (R. 31-41).

Naler requested Appeals Council Review and submitted additional evidence regarding her alleged disability. (R. 10, 14-27, 572-770). The Appeals Council denied Naler's request for review on February 22, 2016. (R. 1-7). Naler then filed this action for judicial review under 42 U.S.C. §§ 405(g).

---

[3] References herein to "R.__" are to the page number of the administrative record, which is encompassed within Docs. 7-1 through 7-13.

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

The court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

# III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis:

> At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. [20 C.F.R.] § 416.920(a)(4)(i), (b). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 416.920(a)(4)(ii), (c). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 416.920(a)(4)(iii), (d). Where … the ALJ finds that the claimant's severe impairments do not meet or equal a listed impairment, the ALJ must then determine, at step four, whether she has the residual functional capacity ("RFC") to perform her past relevant work. *Id.* § 416.920(a)(4)(iv), (e)-(f). "[RFC] is an assessment … of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Finally, if the claimant cannot perform her past relevant work, the ALJ must then determine, at step five, whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v), (g).

*Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014).[4]

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

## IV. FINDINGS OF THE ALJ

Naler was 43 years old at the time of her hearing before the ALJ. (R. 55-56). She completed high school and has past relevant work experience as a cashier, secretary, and leasing agent. (R. 56, 81). She alleged in her Disability Report that she had been unable to work since March 1, 2012, due to bulging discs in her back, neck pain, shoulder pain, and migraines. (R. 220). At the hearing, she also identified pain in her left knee. (R. 57).

The ALJ found that Naler has the following severe impairments: degenerative disc disease, migraines, ulnar neuropathy, left knee osteoarthritis, mild carpal tunnel syndrome, depression, and a history of substance abuse. (R. 33). He determined that these impairments could reasonably be expected to cause Naler's alleged symptoms, but that Naler's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R 35-

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

36, 38).  The ALJ found that Naler had the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: she cannot work at unprotected heights or with hazardous machinery; she can occasionally stoop, crouch, crawl, and kneel; she cannot tolerate concentrated exposure to dust, fumes, or other respiratory irritants; she can frequently interact with co-workers and supervisors; she can have occasional contact with the general public; and she can perform unskilled work. (R. 35).

Based on the testimony of the vocational expert, the ALJ found that Naler could not perform her past relevant work. (R. 39, 81-82).  He further found, however, that there is other work in the national economy that Naler is capable of performing, including dowel inspector, button reclaimer, and addressing clerk.  (R. 40, 82).  He thus concluded that Naler was not disabled. (R. 40-41).

## V.  DISCUSSION

### A.    Motion to Remand Based on SSR 16-3p

The court will first address Naler's motion to have this matter remanded for compliance with SSR 16-3p, which became effective March 28, 2016, after the date of the ALJ's decision.  (Doc. 9).  The Commissioner opposes the remand, arguing that the ruling does not apply retroactively and that even if it did, it would not have changed the ALJ's decision and would not warrant a remand. (Doc. 13 at 15-19).

SSR 16-3p explains that the Social Security Administration is eliminating

"credibility" from the evaluation of a claimant's subjective symptoms:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.

SSR 16-3p, 2016 WL 1119029 at *1.

Naler's motion to remand relies heavily on *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 WL 4250214, at *6-8 (C.D. Ill. Aug. 10, 2016). In *Mendenhall*, the

district court determined that the passage of SSR 16-3p warrants retroactive

application because the new rule clarifies existing law. That court stated:

> [W]here new rules merely clarify unsettled or confusing areas of law, retroactive application is proper where the promulgating agency has expressed the intent that a new rule is a clarification of an existing rule, though this is not necessarily dispositive.…
>
> For a new rule that clarifies existing law to be applied retroactively, the new rule must be sufficiently similar to the prior rule.… Courts will "defer to an agency's expressed intent that a regulation is clarifying unless the prior interpretation of the regulation or statute in question is patently inconsistent with the later one." ….

*Mendenhall*, 2016 WL 4250214, at *3 (quoting *Pope v. Shalala*, 998 F.2d 473, 483

(7th Cir. 1993), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th

Cir. 1999)).

United States District Court Judge Virginia E. Hopkins recently addressed

this issue.  She stated as follows:

By its terms, SSR 16-3p replaces SSR 96-7[p]. The effect of the
new ruling has been described as follows:

Both SSR 96-7p and SSR 16-13p direct that evaluation of
a claimant's subjective symptoms shall consider all
evidence in the record.  Both Rulings also incorporate the
regulations, 20 C.F.R. §§ 404.1529(c)(3) and
416.929(c)(3), that identify factors to be considered in
evaluating the intensity, persistence and functionally-
limiting effects of the symptoms, including a claimant's
daily activities; the nature, duration, frequency and
intensity of her symptoms; precipitating and aggravating
factors; and the type of medication and other treatment or
measures used for the relief of pain and other symptoms,
*i.e.*, the familiar factors identified in *Polaski v. Heckler*,
739 F.2d 1320 (8th Cir. 1984).  But while SSR 96-7p
expressly provided that a credibility finding was required
to be made under those regulations, SSR 16-3p expressly
provides that use of the term "credibility" was being
eliminated because the SSA regulations did not use it. 81
F.R. at 14167.  SSR 16-3p further provides: In
[eliminating reference to "credibility"], we clarify that
subjective symptom evaluation is not an examination of
an individual's character.  Instead, we will more closely
follow our regulatory language regarding symptom
evaluation.  *Id.* SSR 16-3p also expressly provides that
the ALJ may not make conclusory statements about
having considered the symptoms, or merely recite the
factors described in the regulations.  Rather, the
determination or decision must contain specific reasons

for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.  *Id.* at 14171.

*Lewis v. Colvin*, No. CV 15-00447-KD-B, 2017 WL 583392, at *6-7 (S.D. Ala. Jan. 26, 2017), report and recommendation adopted, No. CV 15-00447-KD-B, 2017 WL 581314 (S.D. Ala. Feb. 13, 2017) (quoting *Martsolf v. Colvin*, 2017 U.S. Dist. LEXIS 2748, *14-15, 2017 WL 77424, *5 (W.D. Mo. Jan. 9, 2017)).

In *McVey v. Commissioner of Soc. Sec.*, 2016 U.S. Dist. LEXIS 93884 *14, 2016 WL 3901385, *5 (M.D. Fla. July 19, 2016), the court applied the new ruling and held that the ALJ erred in basing her credibility determination on the fact that the claimant had made inconsistent statements concerning his sobriety, a matter which was <u>unrelated to his impairment</u>.  The court explained the new ruling as follows:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments.  In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.

*Id.* (quoting Evaluation of Symptoms in Disability Claims, SSR 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1119029 (Mar. 16, 2016)).

> *Mendenhall v. Colvin*, 2016 WL 4250214, which was relied upon by
> Ms. Ring, similarly found remand appropriate because the ALJ's
> findings amounted to an "attack on Plaintiff's character." *Id.* at *4.
>
> Whether before or after SSR 16-3p, an ALJ may choose to
> discredit a claimant's testimony <u>about his or her symptoms</u>. In doing
> so, the ALJ considers the claimant's history, the medical signs and
> laboratory findings, the claimant's statements, statements by treating
> and non-treating physicians, and other evidence "*showing how [the
> claimant's] impairment(s) and any related symptoms affect [his or
> her] ability to work.*" 20 C.F.R. § 404.1529(a) (emphasis added).
> Thus, the ALJ's finding regarding a claimant's statements is limited to
> such statements that are <u>about the claimant's pain and symptoms</u>. *See*
> 20 C.F.R. § 404.1529(a) ("In evaluating the intensity and persistence
> of your symptoms, including pain, we will consider all of the
> available evidence, including your medical history, the medical signs
> and laboratory findings and statements about how your symptoms
> affect you.").

*Ring v. Berryhill*, 4:16-cv-0042-VEH, 2017 WL 992174, *12-13 (Mar. 15, 2017)

(emphasis and underlying in original).

This court need not further address the issue of retroactivity because, even if

SSR 16-3p does apply, the ALJ did not violate it in this case. *See Hargress v.

Berryhill*, 4:16-cv-1079-CLS, 2017 WL 588608 (N.D. Ala. Feb. 14, 2017). The

ALJ properly applied the foregoing legal principles. He did not assess or attack

Naler's overall character or truthfulness in the manner typically used during

adversarial court litigation. Rather, he discredited Naler's testimony about her

symptoms. He found that Naler's medically determinable impairments could

reasonably be expected to cause the symptoms she alleged, but that her statements

concerning the intensity, persistence, and limiting effects of her symptoms were

not entirely credible. (R. 35-36). He also articulated his reasons for reaching this conclusion. Specifically, the ALJ stated that Naler's statements were not entirely credible "in light of the objective medical evidence" including a magnetic resonance imaging of Naler's cervical, thoracic, and lumbar spine conducted in 2012; an EMG/Nerve Conduction Study performed in 2014; and the opinions rendered by her treating and examining physicians. (R. 38). His assessment was in accordance with applicable law, even assuming that SSR 16-3p applies retroactively. Accordingly, Naler's motion to remand pursuant to SSR 16-3p (doc. 9) will be denied.

## B.     The ALJ's Hypothetical Question to the Vocational Expert

Apart from her motion to remand, Naler has raised six issues for judicial review.[5] (Doc. 10). The court, however, need only address one of those issues: Naler's assertion that the ALJ's decision is not supported by substantial evidence because he relied on vocational expert testimony that was not based on a hypothetical question comprising all of her impairments and limitations. (Doc. 10 at 40-41). As discussed below, the court agrees with Naler and finds that the case is due to be remanded for consideration of a more complete hypothetical question to the vocational expert that fully accounts for the limiting effects of Naler's

---

[5] One of the issues raised by Naler is the ALJ's evaluation of her credibility without the guidance of SSR 16-3p, which the court has addressed above in the context of her separate motion to remand.

migraine headaches. Because the case is due to be remanded for this reason, the court need not address the other issues raised by Naler, which would not change this result.[6]

As noted above, the ALJ found that Naler is unable to perform any of her past relevant work. (R. 39). Once a finding is made that a claimant cannot perform her past relevant work, the burden shifts to the Commissioner to show that there is other work in the national economy that the claimant is capable of performing. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227. One method of determining whether a claimant is able to perform other work is through the testimony of a vocational expert. *Id.; Phillips v. Barnhart*, 357 F.3d 1232, 1440 (11th Cir. 2004). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson*,

---

[6] The other issues raised by Naler are that the ALJ failed to properly assess her RFC; that the ALJ failed to develop a full and fair record because he did not obtain all of her medical records; that the Appeals Council did not demonstrate that it adequately evaluated the new evidence she submitted in support of her request for review; that the Appeals Council refused to review a physical capacities evaluation and an independent medical evaluation performed after the date of the ALJ's decision without considering whether they were chronologically relevant; and that the ALJ's decision is not based on substantial evidence when the new evidence she submitted to the Appeals Council is considered. (Doc. 10 at 2).

284 F.3d at 1227; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson*).

Here, the ALJ asked the vocational expert the following hypothetical question (among others) at the hearing:

> Q.  I'd like you to consider a hypothetical person the same age, same education, same past work as the claimant.  Further, assume this person is limited to sedentary unskilled work with no climbing of ropes, ladders, or scaffolds; no work at unprotected heights, [or] with hazardous machinery; no more than occasional stooping, crouching, crawling, or kneeling; no concentrated exposure to dust, fumes, or other respiratory irritants; no more than frequent interaction with coworkers and supervisors; and occasional contact with the general public.  Would that person be able to perform any of the claimant's past jobs?

> A.  No, Your Honor.

> Q.  Any other jobs in the national economy?

> A.  Yes.

> Q.  What are some examples?

> A.  Such an individual could function as a dowel inspector …. Such an individual could function as a button reclaimer …. And such a person could function as an addressing clerk ….

(R. 81-82).  The ALJ relied on this testimony in finding that although Naler is not capable of performing her past relevant work, she is capable of performing other work in the national economy and therefore is not disabled. (R. 40).

Naler argues that the ALJ's hypothetical question to the vocational expert did not fully account for all of her limitations and impairments.  The court agrees.

13

Specifically, the ALJ's hypothetical question did not account for Naler's migraine headaches or the limiting effects of her migraines.

Naler testified at the hearing that she has suffered from migraine headaches since age four and gets them three to four times a week. (R. 59). The migraines last from several hours to several days. (*Id.*) They are debilitating and render her unable to function. (R. 70-71). To relieve her migraines, Naler has to lie down in a dark room with no noise and no light. (R. 59). She testified that when she worked at Walmart (her last job), her migraines caused her to miss four or five days of work a month. (R. 59-60).

Consistent with Naler's testimony that she suffers from migraine headaches, the medical evidence reflects that Naler was examined by Dr. Richard Diethelm, a neurologist, on February 2, 2012. (R. 390- 92). Naler's chief complaint was migraines. Dr. Diethelm noted that Naler exhibited "[e]quisite pain upon palpation of the left occipital nerve." (R. 391). He diagnosed "[c]hronic daily headache in the setting of medication overuse—Goody's [headache powder]"—and educated Naler on "the concept of taking too much caffeine in the form of headache powders, Excedrin migraine, Anacin, or in caffeinated beverages." (*Id.*). Dr. Diethelm referred Naler for Botox injections, but Naler testified at the hearing that she never received the injections because she lost her insurance and was unable to pay for them. (R. 59).

On February 22, 2012, shortly before Naler's alleged disability onset date, Dr. Diethelm admitted Naler to St. Vincent's Hospital for treatment of an "[i]ntractable migraine." (R. 393). In his admission note, Dr. Diethelm noted that although Naler understood the concept of taking too much caffeine in the form of headache powders, she stated that headache powders were "the only thing that works." (R. 394). While in the hospital, Naler was given phenobarbital and then Benadryl and Norflex in an attempt to "break her headache." (R. 396). With a "high dose of phenobarbital" Naler was "visibly inebriated but with some improvement in her headache." (*Id.*) However, when Benadryl and phenobarbital were stopped, her headache returned. (*Id.*) Naler was discharged on February 25, 2012, as an "inpatient hospital failure." (*Id.*)

One year later, Dr. William Meador performed a consultative medical examination of Naler. (R. 487-92). Naler reported to Dr. Meador that she suffered from chronic daily headaches and "migraine-like headaches" approximately ten times per month. (R. 488). She stated that her migraines caused vomiting and diarrhea and could last several days at a time. (R. 488-89). The court notes that Naler identified Neurontin, Mobic, Aspercreme, and aspirin as her current medications, but did not identify headache powders. (R. 489). Dr. Meador assessed Naler with, among other diagnoses, chronic daily headache. (R. 492).

In July 2014, following Naler's hearing before the ALJ, Dr. Hisham Hakim performed a consultative neurological examination of Naler. (R. 546-56). Naler reported to Dr. Hakim that she experienced migraines three to four times a week. (R. 546). She characterized the migraines as "excruciating" and said that they were accompanied by nausea, vomiting, and diarrhea. (*Id.*) She said that she would be in a "stupor" for two to three days following a migraine. (*Id.*)

Lastly, Naler was examined by Dr. Jay Ripka in March 2015, four months after the ALJ issued his decision. (R. 709-13). Naler reported to Dr. Ripka that she had been suffering from frequent migraines since age four and that she also had headaches in the back of her head and occipital neuralgia. (R. 711). Dr. Ripka opined that due to Naler's migraine and occipital headaches, Naler would be expected to miss more than two days of work "at least some months." (R. 713).

Consistent with the above evidence (including Dr. Ripka's report, which was not before him), the ALJ found that Naler's severe impairments included migraines. (R. 33). However, the ALJ's hypothetical question to the vocational expert did not explicitly or implicitly account for any limitations resulting from Naler's migraines. In particular, his hypothetical did not include any allowance for the days of work Naler would miss when suffering from a migraine. Even assuming that the ALJ did not fully credit Naler's testimony regarding the frequency and severity of her migraines, his hypothetical question to the vocational

expert needed to include some recognition of her migraines and their effect on her ability to work. Because his hypothetical question did not, the vocational expert's testimony does not constitute substantial evidence and is insufficient to support the ALJ's determination that Naler can perform the jobs identified by the vocational expert. *See Winschel*, 631 F.3d at 1181 ("Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of Winschel's impairments, the vocational expert's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that Winschel could perform significant numbers of jobs in the national economy."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("[W]e cannot assume that the vocational expert would have answered [the ALJ's hypothetical question] in a similar manner had the ALJ instructed him to consider all of the appellant's severe impairments. Thus, we must conclude that the Secretary failed to meet its burden of showing that the appellant could perform other gainful employment in the economy.").

Moreover, the court notes that the ALJ did ask—but did not rely on—a hypothetical question that implicitly accounted for the limiting effects of Naler's migraines. The ALJ also asked the vocational expert whether a person with the same limitations as stated in his initial hypothetical, but who would also need an allowance to miss four or more days of work per month, would be able to perform

any jobs in the national economy. (R. 83). The vocational expert responded, "No, sir." (*Id.*) Nowhere in the ALJ's decision does he explain why he rejected this hypothetical in favor of the hypothetical that did not include an allowance for Naler to miss any days of work.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is due to be reversed and remanded for further proceedings consistent with this opinion. On remand, the Commissioner should consider all of the evidence of record, including the additional records submitted by Naler to the Appeals Council. Naler's motion to remand pursuant to SSR 16-3p is due to be denied.

An appropriate order will be entered separately.

DONE, this the 27th day of June, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge